NUNC PRO TUNC DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Stoops Freightliner, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its award of temporary total disability compensation to respondent, Douglas A. Roop ("claimant"), and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision the magistrate concluded that (1) the commission did not abuse its discretion in determining that claimant did not voluntarily abandon his employment with relator; (2) the commission's award of temporary total disability compensation from August 28, 2002 to November 4, 2002 is improper, as it is barred by the doctrine of res judicata; (3) the commission's award of temporary total disability compensation from November 5, 2002 to February 28, 2003 is not improper; and (4) the commission's failure to issue a refusal order within 14 days of relator's appeal is not actionable in relator's mandamus action.
 {¶ 3} Relator filed four objections to the magistrate's decision. The first two objections are directed to the magistrate's findings of fact and state:
1. The Magistrate erred in finding that the December 10, 2002 motion of respondent Douglas A. Roop ("respondent") prompted relator Stoops Freightliner ("Stoops") to have respondent evaluated by psychologist Michael A. Murphy, Ph.D.
2. The Magistrate erred in finding it was only Stoops' "assertion" that Dr. Ziccardi faxed a C-84 to the Bureau of Workers' Compensation ("Bureau") on March 28, 2003, but did not fax the C-84 to Stoops.
 {¶ 4} As the commission properly notes, relator's first objection technically is correct: that claimant's motion prompted the bureau, not relator, to have Dr. Murphy evaluate claimant. The error, however, is inconsequential, as the commission did not rely on Dr. Murphy's report in ruling on claimant's application.
 {¶ 5} Relator's second objection is unpersuasive. Relator contends the magistrate's using the word "assertion" suggests relator's position is not supported with evidence in the record. Whether or not evidence in the record supports the assertion, the magistrate's finding of fact does not impugn relator's evidence, but merely recites relator's contention.
 {¶ 6} Accordingly, relator's first two objections, to the magistrate's findings of fact, are overruled.
 {¶ 7} Relator's objections to the magistrate's conclusions of law are as follows:
3. The Magistrate erred in concluding that respondent Industrial Commission of Ohio ("Commission") did not abuse its discretion in determining that respondent did not voluntarily abandon his employment with Stoops and awarding temporary total disability ("TTD") compensation beyond March 26, 2003, the date of respondent's termination.
4. The Magistrate erred in concluding that the Commission did not abuse its discretion by awarding TTD compensation from November 4, 2002 to February 28, 2003 when respondent had already received either TTD compensation or living maintenance benefits for that period.
 {¶ 8} Relator's third and fourth objections reargue those matters adequately addressed in the magistrate's decision.
 {¶ 9} Specifically, the magistrate properly concluded "the March 14, 2003 order puts Stoops `on notice that certification for disability would be forthcoming, and there was no reasonable expectation of the claimant's return to work after the release to work on the physical conditions alone.'" (Magistrate's decision, ¶ 50.) Accordingly, the commission did not abuse its discretion in concluding that relator knew claimant was not able to return to his former position of employment, and thus could not be deemed to have abandoned his employment for violation of "no call no show" work rule, because relator was on notice that a disability certification based on the newly allowed psychological condition would be forthcoming.
 {¶ 10} Similarly, relator's fourth objection is unpersuasive. As the magistrate concluded, "there is no evidence in the record that the bureau has paid claimant [temporary total disability] compensation twice for the same period of time or that claimant has received both [temporary total disability] compensation and living maintenance for the same period of time." (Magistrate's Decision, ¶ 57.) The magistrate, moreover, noted relator's remedy: if the bureau mistakenly paid compensation for a period during which claimant already had been paid such compensation, recoupment of compensation was available.
 {¶ 11} Accordingly, relator's third and fourth objections are overruled.
 {¶ 12} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate that portion of its order awarding temporary total disability compensation from August 28, 2002 to November 4, 2002, and to enter an amended order that denies temporary total disability compensation for that period of time.
Objections overruled; partial writ granted.
Klatt and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Stoops Freightliner, : Relator, : v. : No. 03AP-1273 Douglas A. Roop and Industrial : (REGULAR CALENDAR) Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 25, 2004 Eastman Smith LTD, Thomas A. Dixon and Richard L.Johnson, for relator.
Williams Reynolds, and Brian R. Williams, for respondent Douglas A. Roop.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 13} In this original action, relator, Stoops Freightliner ("Stoops"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of temporary total disability ("TTD") compensation to respondent Douglas A. Roop, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 14} 1. On April 22, 2002, Douglas A. Roop ("claimant") sought treatment at St. Rita's Medical Center in Lima, Ohio. Claimant was employed at that time as a painter for Stoops at its Lima body shop. His job required him to use a spray gun and to reach with both arms while painting. He had been employed with Stoops for about three years at that job.
 {¶ 15} 2. On April 22, 2002, claimant was examined by B.T. Onamusi, M.D., at St. Rita's Medical Center. Claimant complained of pain in both shoulders associated with tingling in the fingers of both hands. He reported that his fingers and hands go to sleep from time to time. On that date, Dr. Onamusi's diagnosis was "bilateral shoulder sprain with paresthesia in both hands." Dr. Onamusi indicated that claimant could return to work at Stoops with certain restrictions — that his painting be limited to less than 30 percent of the work shift and that he avoid sustained reaching with either shoulder.
 {¶ 16} 3. Claimant filed an industrial claim which is assigned claim number 02-351102. Stoops, a state-fund employer, certified the claim. On May 10, 2002, the Ohio Bureau of Workers' Compensation ("bureau") issued an order allowing the claim for "sprain bilateral shoulder/arm NOS [not otherwise specified]" based upon Dr. Onamusi's report. The bureau's order recognizes the claim as one for an occupational disease. April 22, 2002, is officially recognized as the date of diagnosis. The bureau also awarded TTD compensation beginning April 22, 2002. The bureau's order of May 10, 2002, was not administratively appealed.
 {¶ 17} 4. By letter dated May 10, 2002, Stoops offered claimant alternative employment to begin on May 16, 2002, at its Lima body shop. Claimant returned to light-duty work for Stoops pursuant to the offer.
 {¶ 18} 5. By letter dated June 3, 2002, Stoops again offered claimant alternative employment — this time at its Lima dealership. The employment was to begin on June 10, 2002. Apparently, claimant did not work beyond June 14, 2002.
 {¶ 19} 6. In the meantime, on June 10, 2002, claimant moved for the recognition of an additional claim allowance based upon reports from orthopedic surgeon Mark G. McDonald, M.D. Dr. McDonald had also certified temporary total disability.
 {¶ 20} 7. On July 1, 2002, the bureau issued an order additionally allowing the claim based upon Dr. McDonald's reports. The bureau also awarded TTD compensation.
 {¶ 21} 8. Stoops administratively appealed the bureau's July 1, 2002 order. Following an August 8, 2002 hearing, a district hearing officer ("DHO") issued an order additionally allowing the claim but denying TTD compensation.
 {¶ 22} 9. Stoops and claimant administratively appealed the DHO's order of July 1, 2002. Following a September 19, 2002 hearing, a staff hearing officer ("SHO") issued an order additionally allowing the claim for "chronic osteomyelitis, bilateral shoulder," but denying TTD compensation. The SHO's order of September 19, 2002, states in part:
* * * [T]he Injured Worker refused to continue performing light duty that was clearly within any restrictions for his shoulder. Therefore, temporary total disability compensation is not payable, until the Injured Worker has surgery and is truly totally disabled.
 {¶ 23} 10. Stoops and claimant sought to appeal the September 19, 2002 SHO's order to the three-member commission. However, the commission refused to hear the appeals.
 {¶ 24} 11. In August 2002, claimant began seeing psychologist Matthew P. Ziccardi. On August 30, 2002, Dr. Ziccardi certified temporary total disability beginning August 13, 2002 to an estimated return-to-work date of December 31, 2002. The C-84 form asks the treating physician to "[l]ist ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work," and "[l]ist ICD-9 Codes with narrative diagnosis(es) for other allowed conditions being treated." Dr. Ziccardi wrote "Major Depression" in response to the second query. There was no response to the first query.
 {¶ 25} 12. On September 5, 2002, Dr. Ziccardi wrote:
Mental Status: On evaluation, Mr. Roop presented as alert but inattentive. He seemed distracted at times by pain and depressive ideation. His mood was anxious with a labile affect. He became tearful at times. His language and speech skills were within normal limits. Recent and remote recall were adequate. Thought processes were connected without evidence of hallucinations or delusions. Intellectual functioning was estimated in the low average range.
Impression: Mr. Roop is presenting with symptoms of Major Depression, moderate severity, single episode. Based on his self-report, these symptoms stem solely from his present vocational situation. He made many statements which implied that a great deal of his self-esteem was related to his role as a good employee and provider and the loss of these roles is clearly affecting his emotional functioning. As such, based on available information, it is my clinical opinion that his mood disorder is related to his current employment situation.
Plan: I discussed the above with Mr. Roop at length. He contracted for safety with me regarding the suicidal ideation. He agreed to follow-up with Dr. Jose regarding the addition of a sedating antidepressant to supplement the Paxil and improve his sleep. I also gave him reading material and instruction for improved sleep hygiene and relaxation techniques. He agreed to see me in one week to address his adjustment. He was given my pager should he need to reach me emergently.
 {¶ 26} 13. On November 5, 2002, claimant underwent right shoulder surgery performed by Dr. McDonald. On December 6, 2002, claimant underwent left shoulder surgery performed by Dr. McDonald.
 {¶ 27} 14. On December 10, 2002, claimant moved for the recognition of "major depression" as an additional claim allowance based upon Dr. Ziccardi's report. The motion, which was on form C-86, also requested that "compensation and medical bills be ordered paid." On the form, claimant also wrote "Matthew P. Ziccardi, Psy. D. Evaluation and Request for Temporary Total Compensation."
 {¶ 28} 15. Claimant's December 10, 2002 motion prompted Stoops to have claimant evaluated by psychologist Michael A. Murphy, Ph.D. Dr. Murphy evaluated claimant on January 17, 2003. In his eight page report, under the caption "Mental Status Examination," Dr. Murphy states:
* * * The Injured Worker is not able to sustain focus or attention long enough to permit completion of tasks in the work place at the present time. He is not able to complete a normal workday and workweek without interruptions from a psychological standpoint. He is not able to maintain regular attendance.
 {¶ 29} At the end of his report, Dr. Murphy answered eight questions. Dr. Murphy's answers for questions numbered 1 and 8 are:
Question 1: Does the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM IV classifications? The Injured Worker alleged Major Depression specific to the 04/22/02 claim. He does report mild depressive symptoms occurring in the past six months. The 04/22/02 injury does appear causal to a mild level of depression, and his unrelated marital problems are also adding to his distress. Psychological testing indicated considerable symptom magnification and endorsement of items indicative of rather severe psychopathology when it was not found by interview and mental status. In my opinion, an Adjustment Disorder with Depressed Mood (309.0) is claim and injury specific.
* * *
Question 8: If the requested psychological condition is present, does it prevent the Injured Worker from returning to his former position of employment? If so, what type of employment is the Injured Worker capable of? The Injured Worker's psychological condition is not work prohibitive. His psychological condition, when viewed alone, would not preclude his performing his usual and customary duties.
 {¶ 30} 16. Following a March 14, 2003 hearing, a DHO issued an order additionally allowing the claim for "major depression." The DHO's order further states:
Temporary Total Disability Compensation is to be paid upon submission of appropriate medical proof. Parties submit that Injured Worker has been paid temporary total disability compensation and living maintenance from date of surgery, 11/04/2002 through 02/28/2003, current C-84s are not on file, 03/01/2003 to date.
Both Dr. Zaccardi [sic] and Murphy agree that Injured Worker has an emotional condition linked to this injury.
Dr. Zaccardi's [sic] 09/05/2002 letter is judged to be insightful and well reasoned.
 {¶ 31} 17. The DHO's order of March 14, 2003 was mailed to Stoops on March 18, 2003.
 {¶ 32} 18. On March 20, 2003, claimant saw Dr. McDonald for a follow-up examination for his shoulder surgeries. On a bureau form captioned "Physicians Report of Work Ability," dated March 25, 2003, Dr. McDonald indicated that claimant could return to work "with no restrictions" on March 24, 2003.
 {¶ 33} 19. By letter dated March 26, 2003, Stoops' human resources manager informed claimant as follows:
Our records show that you were released with no restrictions to return to work March 24, 2003. You did not return to work on March 24, 2003, March 25 or today, March 26, 2003. None of the management team at Stoops Freightliner has been contacted by you to say that you would not be returning. In accordance with our handbook, three days with a no call/no show is termination. * * *
 {¶ 34} 20. On a C-84 dated March 26, 2003, Dr. Ziccardi certified temporary total disability based upon "Major Depression" from February 28, 2003 to an estimated return-to-work date of May 26, 2003. According to Stoops' assertion in this action, Dr. Ziccardi faxed the C-84 to the bureau on March 28, 2003, two days after claimant was terminated. Stoops alleges that Dr. Ziccardi did not fax the C-84 to Stoops.
 {¶ 35} 21. Stoops and claimant administratively appealed the DHO's order of March 14, 2003. Following a May 21, 2003 hearing, an SHO issued an order stating that the DHO's order was being "modified." The SHO's order additionally allows the claim for "major depression" based upon Dr. Ziccardi's reports. The SHO's order further states:
As to the issue of Temporary Total Disability Compensation, the employer argues a violation [of a] specific work rule resulting in a voluntary abandonment of employment by termination on a no call no show basis. The employer finds Dr. McDonald released the Injured Worker to return to work without restriction with regard to the physical conditions on 03/25/2003.
However, the Staff Hearing Officer also finds that on 03/14/2003, a hearing was held on the matter herein before a District Hearing Officer. As part of that order the District Hearing Officer ordered payment of Temporary Total Disability Compensation upon submission of the appropriate medical certification. There was certification on file at that time from Dr. Ziccardi, but the certification only disabled the Injured Worker through 12/31/2002. A subsequent C-84 was filed disabling the Injured Worker from 02/28/2003 through 05/26/2003. However, that C-84 was not filed until 03/28/2003. Nevertheless, the Staff Hearing Officer finds that the order of the District Hearing Officer for payment of Temporary Total Disability Compensation upon submission of the certification from the treating physician is sufficient notice to the employer that the Injured Worker is unable to return to his former position of employment on a psychological basis.
As a result, the fact that the Injured Worker did not call into work from the release to work on 03/25/2003 through when the new C-84 was submitted on 03/28/2003 is not deemed to be a valid no call no show violation.
The employer is certainly entitled to determine their own policies in regard [to] their employment at will employees, however, for purposes of Temporary Total Disability Compensation, this Staff Hearing Officer does not construe this as a voluntary abandonment. The employer was clearly on notice that certification for disability would be forthcoming, and there was no reasonable expectation of the claimant's return to work after the release to work on the physical conditions alone.
Therefore, Temporary Total Disability Compensation is ordered from 08/28/2002 through 12/31/2002, and then again from 02/28/2003 through 05/26/2003 and continuing upon submission of psychological certification. The Staff Hearing Officer finds that the period from 01/01/2003 through 02/28/2003 shall be considered upon submission of psychological certification.
This order is based upon the report of Dr. Ziccardi 09/05/2002, the C-84 dated 08/30/2002 and C-84 dated 03/26/2003.
 {¶ 36} 22. Stoops sought to administratively appeal the May 21, 2003 SHO's order to the three-member commission. In support of its appeal, Stoops' counsel submitted a letter dated June 10, 2003, to the commission which Stoops argues, here, must be construed to raise the issue of res judicata or collateral estoppel. The June 10, 2003 letter states in part:
* * * On September 19, 2002, a staff hearing officer also found that compensation was not payable based on Mr. Roop's refusal of light duty. The staff hearing officer concluded that Mr. Roop would not be entitled to compensation until surgery for the allowed physical conditions. That surgery took place November 5, 2002. Thus, * * * the staff hearing officer * * * awarded compensation for a period of compensation previously denied by the Commission.
 {¶ 37} 23. On July 5, 2003, the commission mailed an order refusing to hear Stoops' administrative appeal.
 {¶ 38} 24. Stoops moved for reconsideration of the commission's July 5, 2003 refusal order. On November 28, 2003, the commission mailed an order denying reconsideration.
 {¶ 39} 25. On December 23, 2003, relator, Stoops Freightliner, filed this mandamus action.
Conclusions of Law:
 {¶ 40} Several issues are presented: (1) whether TTD compensation was improperly awarded beyond March 26, 2003, because the commission allegedly abused its discretion in determining that claimant did not voluntarily abandon his employment with Stoops; (2) whether the award of TTD compensation beginning August 28, 2002 to November 4, 2002, is improper because the SHO's order of September 19, 2002 found that TTD compensation was not payable until claimant underwent surgery, which occurred on November 5, 2002; (3) whether the award of TTD compensation from November 5, 2002 to February 28, 2003, is improper because the bureau had previously paid either TTD compensation or living maintenance benefits for the same period; and (4) whether the commission's failure to issue a refusal order within 14 days of Stoops' appeal of the SHO's order of May 21, 2003, is actionable in this mandamus action.
 {¶ 41} The magistrate finds: (1) TTD compensation beyond March 26, 2003, was properly awarded because the commission did not abuse its discretion in determining that claimant did not voluntarily abandon his employment with Stoops; (2) the award of TTD compensation from August 28, 2002 to November 4, 2002, is improper because it is barred by the doctrine of res judicata; (3) the award of TTD compensation from November 5, 2002 to February 28, 2003 is not improper even though the bureau has presumably paid either TTD compensation or living maintenance benefits for that period of time; and (4) the commission's failure to issue a refusal order within 14 days of Stoops' appeal is not actionable in this mandamus action.
 {¶ 42} Turning to the first issue, in State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401, 403, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
* * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel. Ashcraft v.Indus. Comm. (1987), 34 Ohio St.3d 42] and Watts [State exrel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 43} Stoops' employee handbook states: "Failure to call in or show up for work for three consecutive workdays will be considered a voluntary quit."
 {¶ 44} Stoops' termination letter, dated March 26, 2003, states that claimant is terminated for failing to return to work on March 24, 25, and 26, 2003, and for failing to contact Stoops' management to report that he would not be returning to work.
 {¶ 45} It is largely undisputed that claimant did not return to work on March 24, 25, or 26, 2003, and he did not call in on any of those days.
 {¶ 46} The commission, through its SHO, saw the issue as whether Stoops was on notice by virtue of the proceedings in the industrial claim that, notwithstanding Dr. McDonald's return-to-work release based upon the physical claim allowances, a disability certification based upon the recent psychological claim allowance would be forthcoming.
 {¶ 47} In determining that Stoops was on notice that a disability certification would be forthcoming from claimant's attending psychologist, the commission relied upon the DHO's order that was issued following a March 14, 2003 hearing — an event that preceded claimant's termination by only 12 days. That order, which was mailed to Stoops on March 18, 2003, notified Stoops that the claim was additionally allowed for "major depression," and ordered that "Temporary Total Disability Compensation is to be paid upon submission of appropriate medical proof."
 {¶ 48} Here, Stoops challenges the commission's finding by asserting that there was no evidence putting Stoops on notice. According to Stoops, at the time of the March 14, 2003 hearing, there were only three pieces of psychological evidence on file: (1) Dr. Zicarrdi's September 5, 2002 report; (2) Dr. Zicarrdi's August 30, 2002 C-84; and (3) Dr. Murphy's January 17, 2003 report.
 {¶ 49} Here, Stoops attempts to explain away the significance of the three pieces of evidence by arguing: (1) Dr. Ziccardi's September 5, 2002 report did not address claimant's inability to return to work; (2) the C-84 only certified disability through December 31, 2002; and (3) Dr. Murphy opined that the psychological condition "is not work prohibitive."
 {¶ 50} Stoops' explanation of the evidence misses the point of the commission's order — that the March 14, 2003 order put Stoops "on notice that certification for disability would be forthcoming, and there was no reasonable expectation of the claimant's return to work after the release to work on the physical conditions alone."
 {¶ 51} In essence, Stoops illogically argues that it was not put on notice that a disability certification would be forthcoming because, as of March 14, 2003, there was no disability certification on file.
 {¶ 52} Clearly, there is some evidence cited by the commission to support its finding that Stoops was put on notice that a disability certification based upon the newly allowed psychological conditions would be forthcoming.
 {¶ 53} In sum, the commission did not abuse its discretion in awarding TTD compensation beyond claimant's March 26, 2003 termination from his employment.
 {¶ 54} Turning to the second issue, it is well-settled that the doctrine of res judicata applies to proceedings before the commission. State ex rel. Kroger Co. v. Indus. Comm. (1998),80 Ohio St.3d 649, 651. Res judicata operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. Id.
 {¶ 55} In the SHO's order of September 19, 2002, it was determined that TTD compensation is not payable until the claimant has surgery. The SHO's order is a final commission order. Claimant had his first surgery on November 5, 2002. Giving the SHO's determination on entitlement to TTD compensation the preclusive effect required of a final commission order, the commission was barred from subsequently awarding TTD compensation for the period prior to November 5, 2002. Accordingly, the commission's award of TTD compensation from August 28, 2002 through November 4, 2002, constitutes an abuse of discretion compelling this court to issue a writ of mandamus ordering the commission to vacate the TTD award for this period of time.
 {¶ 56} The third issue is whether the commission, through its SHO, abused its discretion in awarding TTD compensation from November 4, 2002 through February 28, 2003, when the DHO's order of March 14, 2003, recognizes "that Injured Worker has been paid temporary total disability compensation and living maintenance from date of surgery, 11/04/02 through 02/28/2003." According to relator, this scenario constitutes an abuse of discretion because a claimant cannot be paid TTD compensation twice for the same period of disability, nor can a claimant receive both TTD compensation and living maintenance benefits for the same period. R.C. 4121.63. According to relator, the commission abused its discretion by awarding TTD compensation for a period when claimant had already been paid TTD compensation or living maintenance benefits. The magistrate disagrees that the commission abused its discretion in that regard.
 {¶ 57} As the commission correctly points out, there is no evidence in the record that the bureau has paid claimant TTD compensation twice for the same period of time or that claimant has received both TTD compensation and living maintenance for the same period of time. If the bureau has mistakenly paid TTD compensation for a period during which claimant has already been paid TTD compensation or living maintenance benefits, claimant may move the commission for recoupment of compensation.
 {¶ 58} The fourth issue involves R.C. 4123.511(E), which states in part:
Upon the filing of a timely appeal of the order of the staff hearing officer issued under division (D) of this section, the commission or a designated staff hearing officer, on behalf of the commission, shall determine whether the commission will hear the appeal. * * * If the commission or the designated hearing officer determines not to hear the appeal, within fourteen days after the filing of the notice of appeal, the commission or the designated staff hearing officer shall issue an order to that effect and notify the parties and their respective representatives in writing of that order.
 {¶ 59} Here, relator points out that, on June 10, 2003, it filed its notice of appeal from the SHO's order of May 21, 2003, and the SHO's refusal order was not mailed until July 5, 2003. Obviously, the commission's designated SHO, who determined that the commission would not hear the appeal, failed to issue an order to that effect within 14 days of relator's filing of its notice of appeal.
 {¶ 60} Relator does not claim that it was prejudiced in any way by the delay in issuing the refusal order, nor does relator suggest specifically what relief might be appropriate.
 {¶ 61} It is well-settled law that in order for a writ of mandamus to issue, the relator must demonstrate: (1) that he has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act; and (3) that relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Berger v. McMonagle (1983),6 Ohio St.3d 28, 29.
 {¶ 62} Again, relator fails to point out the legal duty that it wants this court to order the commission to perform. Given that the commission has already issued its refusal order, a writ of mandamus would necessarily compel the performance of a vain act. Mandamus does not lie to compel the performance of a vain act. State ex rel. Strothers v. Turner (1997),79 Ohio St.3d 272.
 {¶ 63} Because the commission did abuse its discretion in awarding TTD compensation that was barred under the doctrine of res judicata, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate that portion of its order awarding TTD compensation from August 28, 2002 to November 4, 2002, and to enter an amended order that denies TTD compensation for that period of time.
 /s/ Kenneth W. Macke 
KENNETH W. MACKE MAGISTRATE